UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALI GILL, | ) | CASE NO. 1:13CV2829 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| EYE PHYSICIAN'S AND SURGEONS CLINIC, et al, | ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Ali Gill ("plaintiff" or "Gill") filed this action under 42 U.S.C. § 1983 against Eye Physician's and Surgeons Clinic ("EPSC"), the Ohio State University Medical Center, John Doe #1-"EPSC Attending Surgeon," John Doe #2-"Resident Surgeon" and all Unknown Actors/Agents. In the complaint, plaintiff alleges the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and corresponding rights under the Ohio Constitution. Gill seeks one million dollars in damages. (Doc. No. 1.) Though plaintiff paid the filing fee, he has filed a motion to proceed *in forma pauperis*. (Doc. Nos. 1, 3.) Plaintiff states that "even though [he] has submitted the entire filing fee, [he] is not in a financial position to afford counsel for this complex case." (Doc. No. 1 at 2.) Liberally construed, plaintiff's motion to proceed *in forma pauperis* is a request for appointment of counsel, and the Court shall treat it as such. Finally, he seeks service of his summons and complaint by the U.S. Marshal. (*Id*.)

I.   **BACKGROUND**

Plaintiff asks the Court to consider "the totality of violations," beginning in 1996 when he was incarcerated at Mansfield Correctional Institute (MCI). (Doc. No. 1 at 2.) During that year he fell and suffered detached retina. Prison staff transported Gill for treatment at EPSC, a clinic within the Ohio State University's Medical Center. EPSC determined plaintiff's retina was detached but could possibly be reattached if Gill underwent surgery within 48 hours.

For reasons of which plaintiff is unaware, surgery was postponed until twenty days after Gill's injury. (*Id*. at 3.) When his surgery was performed by the two John Does, and "other unknown actors/agents e.g. anesthesiologists," plaintiff alleges the eyeball was removed from the socket and clamped too tightly. (*Id*. at 4.) He claims the torque on the clamp was so tight it distorted his retina. Gill believes his surgery should have stopped at that point, but alleges the defendants' decision to continue revealed they were "deliberately indifferent" to his medical needs. When his eyeball was placed back in the socket it "turned upward as far as it could go showing only the white of the eye." (*Id*.)

For more than a year after his "botched" surgery, plaintiff alleges he suffered "ongoing eye pain, severe migraine headaches, immense eye pressure, multiple vision problems in both eyes, blindness in the damaged eye, and psychological stress and trauma." (*Id*.) A second surgery was performed on December 9, 1997 to "'try' and reposition the inferior rectus muscles which were damaged by the torqued down clamp(s) installed in the first operation." (*Id*. at 5.) Plaintiff claims the second operation "caused more problems in conjunction with the first and because of the first." (*Id*.) He alleges he suffered more severe eye pain, pressure and migraines.

2

Two years after the second surgery, plaintiff was evaluated by Dr. Katz for a possible third eye surgery at the Correctional Medical Center. After examining plaintiff, Dr. Katz advised Gill that she knew what the surgeons did wrong in 1996 and promised "we shall operate and try and correct what was done wrong." (*Id.*) Because of the damage allegedly caused by the first operation, the third operation "failed."

On June 14, 2012, plaintiff was evaluated by Dr. Susan Baines, an optical neurosurgeon at the Ohio State University Medical Center. She explained to Gill the mistakes she perceived each surgeon had made in the previous operations. After the consultation, Dr. Baines concluded there was nothing further that could be done and that he would have to "live with the pain, discomfort, and blindness for the rest of [his] life." (*Id.* at 5). Based on these facts, plaintiff now maintains the defendants violated his rights under the Eighth Amendment.

## II. STANDARD OF REVIEW

Courts may *sua sponte* dismiss a complaint that purports to rest on federal question jurisdiction, as the instant complaint does, "when the allegations . . . are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37, 94 S. Ct. 1371, 39 L. Ed. 2d 577 (1974)); *see Franchise Tax Bd. of State of Cal. v. Constr. Lab Vacation Trust for S. Cal.,* 463 U.S. 1, 27, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1983) (lower federal courts have jurisdiction to hear only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law). As the Court explained, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III.   ANALYSIS

Plaintiff alleges the defendants violated his rights under the Eighth Amendment because they were deliberately indifferent to his medical needs. Because he names the physicians who performed the surgery in 1996, the Court presumes his claim is based on the 1996 surgery that allegedly damaged his eye and caused severe pain and discomfort.

Any person deprived of a federal right by a state or local official, acting under the color of state law, may bring a cause of action under 42 U.S.C. §1983. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing 42 U.S.C. § 1983). Here, plaintiff alleges the defendants were deliberately indifferent after they damaged his eye during surgery in 1996. Applicable to the states by the Fourteenth Amendment's Due Process Clause deliberate indifference to a prisoner's illness or injury by prison authorities violates the Eighth Amendment, and is, therefore, a valid cause of action under § 1983. *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 543 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L.

Ed. 2d 271 (1991), set forth a two-part framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. In the objective component, plaintiff must first plead facts that, if true, establish a sufficiently serious deprivation. *Id*. Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Routine discomforts of prison life do not suffice—only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id*. at 9. "'[T]he seriousness of a prisoner's medical needs may . . . be decided by the effect of a delay in treatment.'" *Parsons v. Caruso*, 491 F. App'x 597, 601 (6th Cir. 2012) (alteration in original) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

Under the subjective component, plaintiff must show the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Liability cannot be predicated solely on negligence. *Id*. Consequently, allegations of medical malpractice, negligent diagnosis, or negligent treatment fail to state an Eighth Amendment claim. Moreover, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A defendant violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Whether Gill stated a claim under the Eighth Amendment as described above is ultimately irrelevant. Even if he did state a valid Eighth Amendment claim, it is time-barred and subject to dismissal. *See Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) (when meritorious affirmative defense based on statute of limitations is obvious from face of complaint, sua sponte dismissal is appropriate); *Watson v. Wayne Cnty.*, 90 F. App'x 814, 815 (6th Cir. 2004) (same); *see also* 28 U.S.C. § 1915A(b)(1). When considering § 1983 claims, federal courts borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citation omitted). The statute of limitations in Ohio for a § 1983 action alleging bodily injury requires the claim to be filed within two years after its accrual. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1158 (6th Cir. 1991). Even if the full extent of Gill's injury was not known until later, "his cause of action accrued on the date he was denied medical care[.]" *Hermansen v. Schickel*, 202 F.3d 268, at *1 (6th Cir. 1999) (unpublished table decision).

Here, Gill's claims are based on 1996 actions: defendants' unreasonable delay in performing surgery and the eventual "botched" surgery itself. Therefore, his injury accrued when the defendants failed to properly reattach his retina in 1996. He alleges the defendants' actions triggered his iris to reverse one quarter turn in the eye socket, causing an injury of which he was immediately aware. He fails to explain, however, why he waited almost eighteen years to allege he was denied medical treatment for his eye injury and has presented no argument for equitable tolling of the limitations period. Indeed, plaintiff recounts two subsequent surgeries in 1997 and 1999, both done with the express purpose of correcting the errors of the 1996 surgery. (Doc. No. 1 at 5.) Plaintiff has known of his injury for substantially

more than a decade, and is therefore time-barred from asserting a civil rights claim well beyond the relevant two years statute of limitations for personal injury claims.

IV. **CONCLUSION**

For the reasons stated above, this action is DISMISSED for failing to state a claim for relief. Plaintiff's motion for service of summons is DENIED AS MOOT. Plaintiff's motion for appointment of counsel is DENIED. Even though plaintiff has paid the filing fee, he has indicated his desire to proceed *in forma pauperis* status. Therefore, should it later become relevant, the Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: March 20, 2014

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**